UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| CHANNING ALLEN § § Plaintiff. § § VS. § W&T OFFSHORE, INC.; § W&T ENERGY VI, LLC; and STABIL § DRILL SPECIALTIES, LLC § § Defendants. § | CIVIL ACTION NO. 3:18–CV–00305 |

## **MEMORANDUM AND RECOMMENDATION**[1]

Pending before the Court is Defendants W&T Offshore, Inc.'s and W&T Energy VI, LLC's Motion to Compel Arbitration and to Dismiss or Abate ("Motion to Compel Arbitration"). *See* Dkt. 24. This motion was referred to this Court by United States District Judge George C. Hanks, Jr. *See* Dkt. 30. After careful consideration of the Motion to

---

[1] If a motion to compel arbitration is a non-dispositive motion, a magistrate judge's ruling may be set aside only if "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). If, on the other hand, a motion to compel arbitration is a dispositive motion, a magistrate judge may only make a recommendation subject to the district court's *de novo* review. *See id*. at § 636(b)(1)(B). Although the Fifth Circuit has not reached the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion, *see Lee v. Plantation of La., LLC*, 454 F. App'x 358, 359 n.3 (5th Cir. 2011), this Court believes it is just a matter of time before the Fifth Circuit holds that a motion to compel arbitration is a dispositive matter on which a magistrate judge must enter a recommendation to the district court subject to *de novo* review. In holding that a motion to remand is a dispositive motion, the Fifth Circuit utilized reasoning that is equally applicable to a motion to compel arbitration. *See Davidson v. Ga.-Pac., LLC*, 819 F.3d 758, 763 (5th Cir. 2016) (finding that a motion to remand "is dispositive insofar as proceedings in the federal court are concerned" and thus "the functional equivalent of an order of dismissal") (citation omitted). Accordingly, the undersigned issues this Memorandum and Recommendation on the pending Motion to Compel Arbitration rather than an Order.

Compel Arbitration, the response, the reply, and applicable law, the Court **RECOMMENDS** that the Motion to Compel Arbitration be **GRANTED**.

## BACKGROUND

Plaintiff Channing Allen ("Allen") worked for Nabors Offshore Corporation, a subsidiary of Nabors Industries, Inc. (collectively "Nabors"). On June 26, 2018, while working on a drilling platform owned and/or operated by W&T Offshore, Inc. and W&T Energy VI, LLC (collectively "W&T"), Allen alleges that he suffered severe and debilitating injuries. Allen filed this personal injury lawsuit against W&T and Stabil Drill Specialties, LLC. In response, W&T has sought to compel arbitration of the claims brought against it arising out of this workplace accident.

Nabors has an arbitration agreement with its employees known as the Nabors Dispute Resolution Program ("DRP"). On August 8, 2017, Allen signed the DRP and agreed to submit all claims in relation to or arising out of his employment with Nabors to binding arbitration. *See* Dkt. 24-3. This includes "any personal injury allegedly incurred in or about a Company workplace or in the course and scope of an Employee's employment." Dkt. 24-1 at 2.

The DRP provides the exclusive mechanism for resolving disputes between the "Company and Company's present and former Employees." *Id.* at 1. The DRP defines "Company" to include Nabors as well as any Electing Entity "to the extent provided in the Electing Entity's agreement to be bound by the [DRP]." *Id.* at 1. Electing Entity is broadly defined as "any legal entity that has agreed to be bound by the [DRP] as provided herein." *Id.* at 2. In the Offshore Drilling Contract between Nabors and W&T, W&T agreed to

2

abide by the DRP and become "an Electing Entity as to all Disputes between [W&T] and the present and former Employees and Applicants of Nabors pursuant to the Nabors Dispute Resolution Program as it currently exists." Dkt. 24-2 at 22.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA permits a party that has entered an arbitration agreement to request an order compelling the parties to proceed with arbitration. *Id.* at § 4. If the court is "satisfied" that an action is subject to an enforceable arbitration provision, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* at § 3.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). The Fifth Circuit employs a two-step analysis to determine whether a party can be compelled to arbitrate. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996). The court must ask: (1) whether the parties agreed to arbitrate the dispute; and (2) whether the dispute falls within the scope of that arbitration agreement. *See id.* (collecting cases). If the party attempting to compel arbitration establishes the existence of a valid arbitration agreement, "a strong presumption favoring arbitration

arises, and the burden shifts to the party opposing arbitration to raise an affirmative defense to the agreement's enforcement." *Ellis v. Schlimmer*, 337 S.W. 3d 860, 862 (Tex. 2011) (citation omitted).

In deciding whether the parties agreed to arbitrate the dispute, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (collecting cases). In the present case, the parties agree that Texas state law governs matters that are not addressed by the FAA.

## ANALYSIS

The question before the Court is whether W&T, a non-signatory to the DRP, may compel Allen to arbitration pursuant to the DRP. W&T argues that it has a right to compel arbitration on a third-party beneficiary theory because the DRP applies to all Electing Entities, and W&T is an Electing Entity.

Under the FAA, state contract law governs issues of validity, revocability, and enforceability of an arbitration agreement. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). W&T may only enforce the arbitration agreement as a third-party beneficiary if it qualifies as such under Texas law. The Texas Supreme Court has held that a third party may enforce a contract only if the parties clearly intended to secure a benefit to that third party and the contracting parties entered into the contract directly for the third party's benefit. *See Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002). In determining whether the parties to a contract intended to benefit a third-party, courts look to the entire agreement, giving effect to all of its provisions. *See City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011) (citation

omitted). "Although a third party must be more than an incidental beneficiary, a beneficiary is not required to show that the parties executed the contract solely for its benefit." *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 776 (Tex. App.—Beaumont 2008, pet. denied) (citation omitted). A third-party beneficiary may be identified by class or category of persons in the arbitration agreement, all of whom may not be known to the parties at the time of execution. *See ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *6 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.).

W&T argues that this case is extremely similar to *ConocoPhillips* and *In re Citgo,* two Texas appellate cases upholding the enforceability of arbitration clauses involving non-signatory third-party beneficiaries. The Court will discuss both cases.

In *ConocoPhillips*, ConocoPhillips hired J.V. Industrial Companies, Ltd. ("JVIC") to perform fabrication work at a ConocoPhillips refinery. JVIC had arbitration agreements with its own employees that covered:

> all claims and/or disputes between and among all Applicants/Employees and JVIC and all disputes between and among Applicants/Employees and JVIC's subcontractors, contractors, clients, vendors, facility owners . . ., and each of their subsidiaries, affiliates, parents, employees, agents, and any other person or entity who has signed this or a similar agreement or otherwise agreed to use arbitration to settle claims or disputes that may arise.

2012 WL 1059084 at *1. After several JVIC employees were injured at the ConocoPhillips refinery, they sued ConocoPhillips in Texas state court. ConocoPhillips moved to compel arbitration, claiming that it was a third-party beneficiary under the arbitration agreements in place between the injured workers and JVIC. In ordering arbitration to proceed, the First Court of Appeals held that "ConocoPhillips is a third-party beneficiary entitled to enforce

5

the arbitration agreements and that the employees' claims fall within the agreements' scope." 2012 WL 1059084 at *1. The appellate court noted that the arbitration agreement included specific language which "expressly mandate[d] arbitration of disputes in which JVIC is not a party" and this obligation would have no effect "if it cannot be enforced by a third-party." *Id.* at *6. Thus, "[t]his language is therefore some indication that JVIC intended for clients like ConocoPhillips to have the right to enforce the arbitration agreements." *Id.*

In *In re Citgo*, a Pat Tank, Inc. ("Pat Tank") employee sued Citgo for damages relating to an on-the-job injury he allegedly sustained at a Citgo refinery in Louisiana. The plaintiff had signed a Dispute Resolution Agreement with Pat Tank, which contained an arbitration provision. The arbitration clause covered all claims and disputes "between and among Employee and Employer [ ], and Employer's customer, and clients" or "the owner of any property upon which Employee has performed services on behalf of Employer." *In re Citgo*, 248 S.W.3d at 773, 775 (internal quotation marks and brackets omitted). Given this contractual language, Citgo argued that it had the right to invoke and enforce the arbitration agreement. The Beaumont Court of Appeals agreed, holding that Citgo was an intended third-party beneficiary of the dispute resolution agreement because "[a]lthough the contract does not name Citgo specifically, the agreement is sufficiently clear to establish that the parties intended to cover [customers and clients] and the record establishes Citgo is a customer or client." *Id.* at 776.

In her response to the Motion to Compel Arbitration, Allen advances several arguments in opposition to arbitration. First, Allen argues that the DRP does not express

6

a clear intent to benefit W&T because "the phrase 'Electing Entity' is not defined anywhere in the contract." Dkt. 27 at 9. This is simply not true, and Allen's counsel had to admit at oral argument that Electing Entity is clearly defined on the second page of the DRP to include "any legal entity that has agreed to be bound by the Program as provided herein." Dkt. 24-1 at 2.

Next, Allen claims that Nabors and W&T agreed in the Offshore Drilling Contract between them that W&T would be an Electing Entity only "[i]n the event [that Nabors] ha[d] provided [W&T] prior to execution . . . [with] the terms and provisions of the Nabors Dispute Resolution Program." Dkt. 24-2 at 22. Because there is "no notation, affidavit, or even statement provided to show that W&T ever received a copy of the DRP before signing its contract with Nabors," Allen asserts that W&T is not an Electing Entity. Dkt. 27 at 10. This argument also falls by the wayside. In an affidavit submitted to the Court in support of the Motion to Compel Arbitration, W&T's Assistant General Counsel expressly states that Nabors provided a copy of the DRP prior to the execution of the contract and W&T intended to become an Electing Entity under the DRP. *See* Dkt. 29-1 at 1–2. Given this unrebutted evidence, Allen's counsel conceded at oral argument that W&T is, in fact, an Electing Entity.

That leaves Allen with one final argument, which is briefly raised in the papers opposing arbitration, but was more fully developed at oral argument. Because the term "Electing Entity" is so broad, Allen argues, it is patently unfair to force him to arbitrate a dispute when there is no way he could have possibly known at the time he signed the DRP that W&T would be an Electing Entity. To start, the Court certainly recognizes that the

7

definition of Electing Entity is extremely broad. It covers *any* entity that has agreed to be bound by the DRP and is not expressly limited to any client, customer, or vendor of Nabors. As noted at oral argument, the term Electing Entity could, technically speaking, extend to a yard maintenance company Allen hired to perform work at his home so long as the yard maintenance company "agreed to be bound by the [DRP] as provided herein." Dkt. 24-1 at 2. Although the term "Electing Entity" is admittedly expansive, the contractual language is also abundantly clear that Nabors intended for entities, such as W&T, to have the right to enforce the DRP. *See id.* at 1 (DRP specifically extending mandatory arbitration to a wide range of individuals and entities other than Nabors, including "every direct or indirect subsidiary" of Nabors, "any Electing Entity," and "any entity or person alleged to have joint and several liability concerning any Dispute, and all of their directors, officers, employees, and agents"). The DRP unmistakably provides that Electing Entities can force Nabors's employees injured while performing their job duties to arbitrate any personal injury dispute. As far as Allen's contention that he did not know W&T was an Electing Entity, Texas law does not require third-party beneficiaries be identified at the time of the agreement. *See ConocoPhillips*, 2012 WL 1059084 at *6. Instead, the arbitration provision must only identify the "class or category of persons" entitled to enforce arbitration. *See id.* Here, that class or category is clearly identified as any Electing Entity. It is hard to imagine that Allen can really argue with a straight face that he is surprised that such contractual language would be used to compel him to arbitrate against W&T, the company that owned and/or operated the drilling platform where the injury allegedly occurred. As such, the Court finds that W&T is a third-party beneficiary entitled to enforce

the arbitration provision contained in the DRP. Because there is no question that the current dispute falls within the scope of the arbitration agreement at issue, the Court believes W&T is entitled to compel arbitration.

Once a determination has been made that arbitration is appropriate, the next issue to address is whether the Court should dismiss all claims against W&T or simply abate the case pending arbitration. The decision whether to stay or dismiss a case when compelling arbitration is left to the broad discretion of the district court. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (a court may dismiss, rather than stay a case, when "*all* of the issues raised in the [suit] must be submitted to arbitration") (collecting cases); *Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) ("Although Section 3 of the Federal Arbitration Act directs district courts to stay pending arbitration, we are bound by our precedent which states that dismissal is appropriate 'when all of the issues raised in the district court must be submitted to arbitration.'") (quoting *Alford*, 975 F.2d at 1164). Because all of Allen's claims against W&T are subject to arbitration, there is no good reason to clog up the Court's docket by staying the case against Allen until the arbitration concludes. The better course of action is to go ahead and dismiss the case against W&T with prejudice, allowing Allen to move forward with the arbitration proceedings required by the DRP.

## CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Motion to Compel Arbitration be **GRANTED**, and this case against W&T dismissed with prejudice.

9

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 1st day of July, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE